UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

JAMES A. WEBB                                                                                           PLAINTIFF

v.                                                                            CIVIL ACTION NO. 1:08-CV-P105-M

JACKIE T. STRODE et al.                                                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Defendant Jackie T. Strode moved to dismiss the instant action (DN 21). Plaintiff filed a response (DN 22), and Defendant filed a reply (DN 23). Pursuant to Fed. R. Civ. P. 12(d), the Court notified the parties that it will construe the motion to dismiss as one for summary judgment and afforded Plaintiff time to respond to the summary-judgment motion (DN 27). Plaintiff has filed a response (DN 29). The matter now being ripe, the Court will grant Defendant Strode's motion to dismiss, which is construed as a motion for summary judgment (DN 21), for the following reasons.

### I. STATEMENT OF FACTS

Plaintiff, who is incarcerated at the Warren County Regional Jail, sued Jailer Jackie T. Strode and Lt. Dianne Martin. On initial review, the Court dismissed the official-capacity claims, leaving only the individual-capacity claims. In his complaint, which he signed under penalty of perjury, Plaintiff states that on July 7, 2008, he had to defend himself from a "MS13" gang member and federal inmate named Jorges Fernandez, who he states stabbed him with a sharp pencil in his right arm. He explains that the federal inmate kept saying that he was going to kill him, so he hit the federal inmate around five or six times. He also asserts that on May 21 he and Defendant Martin "had gat in to it because she called me a 'NIGGER.'" Plaintiff further states that "her words were why are you acting like a Nigger. I asked her to say it agin and she

tryed to change what she had said thats w[h]ere my human rights amendments was broke that why I believe she put me in with that Federal inmate." He further alleges that he made many requests to talk to Defendant Strode, but that Defendant Strode did not do anything.

## II. ANALYSIS

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id*. If the nonmoving party will bear the burden at trial on a dispositive issue, the nonmoving party must go beyond the pleadings and by his own affidavits, "or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal quotation marks omitted, citing FED. R. CIV. P. 56(e)). If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of

proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* (internal quotation marks omitted). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." *Id.*

Defendant Strode argues that dismissal of this case is appropriate because Plaintiff failed to exhaust his administrative remedies. He contends that at all times pertinent to the complaint, WCRJ has had an inmate grievance procedure. Defendant Strode states that, since January 8, 2008, Plaintiff has filed ten inmate grievance forms using the grievance procedure, but at no time did Plaintiff file a grievance form regarding the matters raised in this case. Defendant Strode attaches his affidavit, in which he avers that he has been the WCRJ jailer since Plaintiff was incarcerated there on January 8, 2008; that, at all times during Plaintiff's incarceration, WCRJ has had an inmate grievance procedure; and that a copy of the "Inmate Rights & Rules and Services Offered to Inmates" form was presented to Plaintiff upon his incarceration but Plaintiff

3

was uncooperative and refused to sign the form although he was made fully aware of the WCRJ grievance policy.  Defendant Strode further avers that a copy of the Inmate Rights & Rules and Services Offered to Inmates is posted in each cell/dorm of the WCRJ and that at no time did Plaintiff file an inmate grievance form relating to the matters raised in this action.  Defendant Strode also attaches a copy of the WCRJ Inmate Rights & Rules and Services Offered to Inmates with Plaintiff's name on it, dated January 8, 2008.  In the blank marked "Inmate Signature" the word "uncooperative" appears.  Under the heading "Grievance" on that form the following appears:

> Inmates are allowed to submit grievances if he/she believes he/she has been subject to abuse, harassment, abridgement of civil rights or denied privileges as specified in the posted rules.  The grievance is to be made in the form of a written statement, sealed in an unstamped envelope and addressed to the Jailer.  Grievance forms are available and must be signed by the inmates . . . The Grievance will be answered by a Chief Deputy of the Jailer's Designee.  If not satisfied with the disposition/answer of the Chief Deputy/Designee, the inmate has two (2) days to appeal to the Jailer.  If not satisfied with the Jailers [sic] disposition/answer, the inmate has five (5) days to appeal to the County Judge Executive . . . .

Defendant Strode also attaches several grievances filed by Plaintiff on the WCRJ inmate grievance form, none of which are pertinent to the claims raised in the complaint.  He further argues that because there is not and has never been a person named "Dianne Martin" at WCRJ, Plaintiff's complaint fails to state a claim.

In response, Plaintiff states that he had recently discovered that the correct name is "Dianne Hardeman" not "Dianne Martin."  He states, "I have wrote a grievance form and I have copy so these grievane's it is that they have been throwing the grievance away about the problem with Mrs. Hardeman using racial slur."  He continues, "They did not ask me for a

4

signature for Inmate rights & Rules and Services offered to inmate plus they forge my signature. If they would have ask me for my signature I would have signed it with no problem." He attaches four WCRJ forms. The first is an inmate-request form dated June 1, 2008, stating that he has a problem with Jorges Ferandez. The second inmate request form is dated June 10, 2008, regarding Ferandez. The third is an inmate grievance form dated June 5, 2008, stating that he was called "nigger" by Dianne Martin. He also attached a May 21, 2008, inmate grievance form stating that Dianne Martin had called him a "nigger."

  In reply, Defendant Strode states that the grievances and inmate-request forms attached to Plaintiff's response have never been filed with WCRJ officials. Defendant Strode assumes that Plaintiff recently wrote those forms and back-dated them. Defendant Strode points out that the other grievances filed by Plaintiff were responded to by prison officials, whereas Plaintiff had not submitted any responses to the grievances he attached. Defendant Strode further argues that even if Plaintiff had submitted those grievances, he had failed to exhaust because he failed to appeal any decision to the Warren County Judge Executive as outlined in the grievance policy. Defendant Strode further argues that Plaintiff was aware of the grievance procedure and that his signature was not forged on the copy of the grievance policy as no signature appears thereon. Defendant attaches another affidavit, in which he avers that the two grievance forms and two inmate-request forms which were attached to Plaintiff's response were never filed with officials at WCRJ; that Plaintiff has never filed a grievance with regard to the subject matter of this lawsuit; and that he has never appealed any grievance decision to the Warren County Judge Executive.

  In his response after the Court gave notice that Defendant Strode's motion to dismiss

5

would be construed as a motion for summary judgment, Plaintiff does not address the issue of exhaustion. He states that he "swears and affirms that the specific claim of being titled and/or called 'A NIGGER' as well as the placement after the fact into a cell with a dangerous federal inmate for the purpose to cause him harm constitutes violation of his civil rights by the defendants in there unofficial capacity and their choice was based upon their previous actions of titling and naming the Plaintiff 'A NIGGER.'"

Prisoner civil rights cases are subject to the Prison Litigation Reform Act's (PLRA) mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To exhaust a claim, a prisoner must proceed through all of the steps of a prison's or jail's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

The Supreme Court recently provided further clarification of the PLRA's exhaustion rule in *Jones v. Bock*, 549 U.S. 199 (2007). The Court struck down the Sixth Circuit's rule which placed the burden on prisoners to plead and prove exhaustion in their complaint, holding instead that failure to exhaust is an affirmative defense. *Jones*, 549 U.S. at 216. The Court further held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will

6

vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218.

Here, Defendant Strode has averred that Plaintiff never submitted grievances regarding the incidents referred to in the complaint and that Plaintiff has never appealed any grievance such that the jail's grievance procedure would be exhausted for any claim. Defendant Strode addresses the purported grievances that Plaintiff claims he submitted regarding the incidents in the complaint by averring that those grievances were never submitted to WCRJ officials. He also points out that Plaintiff has not submitted any responses to those purported grievances showing that they were in fact submitted.

First, the Court must consider whether Plaintiff has offered appropriate summary-judgment proof to show the existence of a disputed factual element. Plaintiff's complaint (DN 1) is verified. Statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. Fed. R. Civ. P. 56(e) (affidavits opposing summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"); *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). However, his complaint does not contain any statements that Plaintiff exhausted his administrative remedies. Plaintiff offers no verified statement that he did submit the purported grievances and, in fact, offers no response to Defendant Strode's sworn statement that the purported grievances were never submitted to WCRJ officials. Plaintiff has not established the existence of a disputed factual element to defeat summary judgment. Because Plaintiff has not

exhausted his administrative remedies, his federal claims are barred by the PLRA exhaustion requirement.

With regard to Dianne Martin, whom Plaintiff listed as a defendant but who has never been served, the Court construes Plaintiff's subsequent response (DN 22), in which he states that he recently had learned that the proper name of the defendant was "Dianne Hardeman" not "Dianne Martin," as a motion for leave to amend the complaint to change the name of Defendant from "Dianne Martin" to "Dianne Hardeman."

Under the Federal Rules of Civil Procedure, a district court should freely grant a plaintiff leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a). "A district court may deny a plaintiff leave to amend his or her complaint, however, when the proposed amendment would be futile." *Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006). As has already been discussed, Plaintiff has not submitted competent evidence to refute Defendant Strode's evidence that his federal claims were not administratively exhausted. To amend to change Defendant Dianne Martin's name to Dianne Hardeman would be futile.

### III. CONCLUSION AND ORDER

For the foregoing reasons, Defendant Strode's motion to dismiss, which the Court has construed as a motion for summary judgment (DN 21), is **GRANTED**. Plaintiff's response (DN 22), which the Court construes to be a motion to amend the complaint, is **DENIED**. The action is **DISMISSED** without prejudice for failure to exhaust.

Date:

cc:    Plaintiff, *pro se*
       Counsel of record
4414.009